**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| Paul Aversano, *on behalf of himself and all others similarly situated,* | : : : : : | |
| Plaintiff, | : : | Civil Action No.: |
| v. | : : | |
| Santander Bank, N. A., | : : | **CLASS ACTION COMPLAINT** |
| Defendant. | : : : : | |

Plaintiff, Paul Aversano, by and through undersigned counsel, pleading on his own behalf and on behalf of all others similarly situated, states as follows:

1.       This is an action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*, Breach of Contract, New Jersey Consumer Fraud Act and other statutory and common law. Plaintiff, individually, and on behalf of all others similarly situated ("Class Members") brings this action against Santander Bank, N.A. (collectively, "Defendant"), based upon Defendant's false representations in mortgage loan documents.

2.       Defendant issued loans which accrued interest daily but represented, in its Truth-in-Lending Disclosures, that such interest accrued monthly.    Defendant failed to:

a)  Accurately state and properly disclose the Total of Payments applicable to loans;

b)  Accurately state and properly disclose the Finance Charge applicable to loans;

c)  Include an "e" next to any amount on Truth-in-Lending disclosures which was estimated on account of treatment as simple interest loans;

d)  Materially misrepresented that borrowers had a Grace Period for late payments, that a "Late Charge" would be imposed only if payment was "more than 15 days late,"

1

when, in fact, Defendant imposed interest *each* day after the due date, including for days between the time money was taken out of Class Members' accounts and the "Posting Date" of the payments.

e) Issuing materially deceptive and fraudulent monthly statements that show the interest charge of only $1349.31 when the bank is in fact adding additional interest in months that have 31 days, in leap years, and at any time when the bank applies Plaintiff's payment after the date it is due (including during the grace periods).

## PARTIES, JURISDICTION AND VENUE

3.    Plaintiff lives at 7 Twinbrooks Court, Holmdel, New Jersey.

4.    Santander Bank, N. A., (formerly Sovereign Bank and referred to herein as the "Bank")), is a wholly owned subsidiary of the Spanish Santander Group. It is based in Boston, Massachusetts, and conducts substantial business in New Jersey, including nearly 200 locations in New Jersey.

5.    This Court has subject matter jurisdiction pursuant to 15 U.S.C. §§ 1601, *et seq.*,28 U.S.C. §§ 1331 and 1367(a).

6.    Venue is proper in this district as Plaintiff resides here and a substantial part of the events giving rise to the claims occurred here.

## FACTS

7.    In June of 2007, Paul Aversano became interested in obtaining a second mortgage on his property. He submitted an inquiry to Lending Tree which provided him a number of quotes, from which he chose Santander's product as having the best terms.

8.    On June 26, 2007, Paul Aversano walked into a Holmdel branch of Sovereign Bank to take out a second mortgage on his property.

2

9.    After a discussion with a customer service representative, Mr. Aversano filled out the application for a fixed rate mortgage at a rate of 7.24%.

10.    The Bank approved his application.

11.    Thereafter, the Bank representative entered Plaintiff's information into the Bank's computer system and printed the mortgage forms for his signature.

12.    A Truth-in-Lending Disclosures appeared on page 1.    The Disclosures (reproduced below and attached as Exhibit 1) showed an interest rate (7.2400%), total cost of credit ($363,348.40), the amount of credit provided ($250,000) and the amount Mr. Aversano will have paid after making all scheduled payments ($613,348.40).

13.    The Disclosures listed the total number of payments (360), the amount of each payment ($1,703.74), the due date of the payments (30th) and the date the payments were to begin (July 30, 2007).

| TRUTH-IN-LENDING DISCLOSURES | | | |
|---|---|---|---|
| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total Of Payments |
| The amount of my credit as a yearly rate. | The dollar amount the credit will cost me. | The amount of credit provided to me or on my behalf. | The amount I will have paid after I have made all payments as scheduled. |
| 7.2400      % | $   363,348.40 | $   250,000.00 | $   613,348.40 |
| My payment schedule will be: | | | |
| Number of Payments | Amount of Payments | When Payments Are Due:       30th | |
| 360 | $   1,703.74 | Monthly, beginning:    JULY 30, 2007 | |

14.    Before signing the note, Mr. Aversano ran the calculations through an online calculator and verified that these disclosures were correct for a conventional, fixed rate mortgage he understood he was taking.

15.    The Promissory Note and Disclosures disclose that where an "e" is appended to a

3

figure it denotes if the number is an "estimate." No numbers on Mr. Aversano's Promissory Note and Disclosures had an "e" appended to them.

16.    To obtain a discount of .5 percent, Mr. Aversano set up a direct debit to allow the Bank to take payments directly from his account.

17.    Like most conventional mortgages, the loan Mr. Aversano took included a grace period provision for late payments:

**Late Charge:** If my loan payment is more than 15 days late, I will be charged 10% of the payment or $20.00, whichever is more.

18.    Beginning in July 2007 and for the next 10 years, Mr. Aversano made regular monthly payments to Sovereign and then, after its rebranding, to Santander.

19.    The payments of $1703.74 were deducted on the 30th of each month.

20.    Several times during the ten-year period the Bank neglected to debit the plaintiff's account properly and applied late fees, but reversed those late fees when it became aware of the errors.

21.    The Bank sent Plaintiff monthly statements showing the payment and interest charges. A typical statement looks as follows:

| Account Information | |
|---|---|
| Outstanding Principal | $226,748.64 |
| Interest Rate | 7.2400% |
| Prepayment Penalty | NO |

| Explanation of Amount Due | |
|---|---|
| Principal | $354.43 |
| Interest | $1,349.31 |
| Loan Protection Fees | $0.00 |
| Escrow (for Taxes & Insurance) | $0.00 |
| Regular Monthly Payment | $1,703.74 |
| Late Charges | $0.00 |
| Flood Insurance Premiums | $0.00 |
| Other Fees and Charges | $0.00 |
| Adjustments | $0.00 |
| Overdue Amount | $0.00 |
| Total Amount Due | $1,703.74 |

**Past Payments Breakdown**

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $307.56 | $2,339.56 |
| Interest | $1,396.18 | $9,586.62 |
| Flood Insurance Premiums | $0.00 | $0.00 |
| Loan Protection Fees | $0.00 | $0.00 |
| Escrow (for Taxes & Insurance) | $0.00 | $0.00 |
| Late Charges | $0.00 | $0.00 |
| Other Fees and Charges | $0.00 | $0.00 |
| Total | $1,703.74 | $11,926.18 |

**Transaction Activity (6/11 to 7/10)**

| Posting Date | Effective Date | Activity Description | Amount | Principal Balance |
|---|---|---|---|---|
| | 06-11-17 | BEGINNING PRINCIPAL | | $227,056.20 |
| 07-03-17 | 06-30-17 | PAYMENT RECEIVED - THANK YOU | $1,703.74 | $226,748.64 |
| | | PRINCIPAL | $307.56 | |
| | | ** INTEREST CHARGE ** | $1,396.18 | |
| | 07-10-17 | ENDING PRINCIPAL | | $226,748.64 |

22.    The monthly statements are materially deceptive and fraudulent because they show the interest charge of $1349.31 when the bank was in fact adding additional interest in months that had 31 days, in leap years, and at any time when the bank applied plaintiff's payment after the date it was due (including during the grace periods).

23.    The Bank did not post the payments the same day they were made.

24.    Payments were posted and applied to the mortgage one or two days after they were taken from Plaintiff's account, which itself was held with the Bank.

25.    During this period the mortgage was reported to credit bureaus as a conventional mortgage loan.

26.    After ten years of payments, Mr. Aversano began to consider refinancing the loan. He contacted Santander in July 2017 and asked for the loan payoff amount.

**Discovery of the Fraud**

27.    When contracted, Santander advised that the loan payoff was about $11,000 higher

5

than the payoff Mr. Aversano had calculated.

28.    When he inquired as to the reason for the difference, the Bank advised that his mortgage interest was not in fact compounded monthly, as shown on Truth-in-Lending Disclosures.

29.    By letter dated July 27, 2017, Santander's Corporate Complaint Manager, JoAnn Gruber, advised that his loan was "not amortized as a conventional mortgage, but was, instead a "simple interest loan ("SIM")."

> "For these types of loans, the interest charged can vary based on the amount of days there are from the payment received to the current payment received. Interest accrues from payment date to payment date. Unfortunately due to the variation in the amount of days of interest that can be charged per payment, there is no amortization schedule that can be prepared on this type of loans"

30.    Mr. Aversano then reviewed his Promissory Note and realized that despite the fact that the (1) Truth-in-Lending Disclosures on the front of the Note showed interest compounding monthly as expected with a conventional mortgage and (2) the Truth-in-Lending Disclosures did not state that any disclosure was the result of an estimate, paragraph 4 on page 4 of the Note set forth that interest is "imposed each day."

**Difference between Conventional and Simple Interest Mortgages**

31.    On a Standard Mortgage interest is calculated monthly.   On a SIM interest is calculated daily.

32.    With monthly accrual, the quoted annual rate (*e.g.* 7.24%) is divided by 12 and that number is multiplied by the loan balance at the end of the preceding month to get the interest due for the month.

33.    With daily accrual, however, the annual rate is divided by 365 and that number is

multiplied by the loan balance at the end of the preceding day to get the interest due for the day.

34.    In a SIM, the grace period is not a period free of interest but rather interest accrues daily, and a borrower must pay before the due date to avoid additional accrual of interest.

35.    On the simple interest version, the annual rate of 7.24% was divided by 365, converting it to a daily rate of .01984%. The daily rate was then multiplied by the loan balance to obtain the interest due for the day.

36.    The Bank recorded interest in a special accrual account, which increases daily interest but which is not reported to Mr. Aversano and other class members.

37.    When a payment is received, it is applied first to the accrual account, and what is left over is used to reduce the balance. When the balance declines, a new and smaller daily interest charge is calculated.

38.    Thus, if two loans are for the same amount   but one is simple interest, a borrower will pay more interest on a simple interest mortgage unless he or she systematically makes monthly payments *before* the due date.

39.    The standard mortgage has a grace period within which borrowers can pay without penalty. On a simple interest mortgage, in contrast, there is an extra penalty where borrowers must pay interest for every day they are late.

40.    Thus, unbeknownst to him, Mr. Aversano was paying interest every day after the 30th of each month.

41.    Even when Mr. Aversano made timely payments, the Bank charged him additional interest because the Bank usually *applied* the payment one or two days later.

42.    In addition, the Bank charged Mr. Aversano interest for the periods when, due to its fault, payments were not properly taken out of Mr. Aversano's account.

7

43.     Because the Truth-in-Lending Disclosures showed a calculation for a standard, conventional mortgage, the disclosures were false and the Defendant wrongfully misrepresented the interest calculation on the loan by showing on the Truth-in-Lending Disclosures calculations that demonstrated interest compounding monthly when in fact the Defendant compounded interest daily.

44.     Defendant misrepresented the Total of Payments applicable to loans, because the Simple Interest Calculation, if truthfully disclosed, would have shown the Total of Payments to be substantially higher.

45.     Defendant misrepresented the Finance Charge applicable to the loan because, had it been calculated as a SIM, it would be substantially higher.

46.     Defendant failed to indicate that any of the calculations shown on the Truth-in-Lending Disclosure were estimates by including an "e" next to the amount.

47.     Further, Defendant's materially misrepresentations lulled Plaintiff into believing that he had a Grace Period such that a "Late Charge" would only be imposed if loan payment is "more than 15 days late."

48.     However, Defendant in fact imposed interest each day after the due date, including for days between the time money was taken out of Class Members' accounts the "Posting Date" of the payments.

49.     Moreover, Defendant issues materially deceptive and fraudulent monthly statements that show the interest charge of only $1349.31 when the bank is in fact adding additional interest in months that have 31 days, in leap years, and at any time when the bank applies Plaintiff's payment after the date it is due (including during the grace periods).

## CLASS ALLEGATIONS

50.    Plaintiff brings this claim pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf the following class (the "Class"):

**Class Definition: (1) All persons in the United States (2) issued a Promissory Note and Disclosure detailing calculations for a conventional mortgage and whose (3) mortgages were administered by Defendant as Simple Interest Mortgages or were converted to Simple Interest Mortgages after origination.**

**Class 2:    (1) All persons in the United States (2) issued a Promissory Note and Disclosure detailing calculations for a conventional mortgage and who (3) were charged interest by Defendant in the gap period between the Effective Date of the Payment when money was deducted from their accounts and the Posting Date of the Payments when the Bank posted the payments to their mortgage accounts.**

51.    Plaintiff represents and is a member of the Classes.    Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family.

52.    Plaintiff does not know the exact number of members in the Classes but, based upon the size and national scope of the Bank, Plaintiff reasonably believes that the Classes number in the thousands.

53.    The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Classes can be identified easily through records maintained by Defendant.

54.    Numerosity: Class membership is so numerous that the individual joinder of all members thereof is impracticable under the circumstances of this case. While the exact number of class members is unknown at this time, Plaintiff is informed and believe that each of the

proposed classes consists of hundreds or thousands of members.

55.     Commonality: Common questions of law or fact are shared by Class Members. This action is suitable for class treatment, because these common questions of fact and law predominate over any individual issues. Such common questions include, but are not limited to, the following:

(a) Whether Defendant made misrepresentations identified in Paragraphs 2(a)-(d) hereof.

(b) Whether Plaintiff and Class Members are entitled to damages;

(m) Whether Plaintiff and Class Members are entitled to punitive damages; and

(n) Whether Defendants' affirmative defenses, if any, raise common issues of fact or law as to Plaintiff and Class Members as a whole.

56.     Typicality: Plaintiff's claims are typical of the claims of absent Class Members.

57.     Ascertainable Class: The proposed classes are ascertainable in that the members can be identified and located using information contained in Defendant's mortgage lending records.

58.     This case is brought and can be maintained as a class action under Rule 23(b)(1), 23(b)(2), and 23(b)(3):

a.   Injunctive and/or Declaratory Relief to the Class is Appropriate: Defendant  has acted or refused to act on grounds generally applicable to each Class thereby making final injunctive relief or corresponding declaratory relief with respect to each class as a whole appropriate; and

b.   Predominant Questions of Law or Fact: Questions of law or fact common to all Class Members, including those identified above, predominate over questions

10

affecting only individual Class Members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would require. Moreover, absent class treatment of this controversy, the amount of individual Class Members' losses in comparison to the enormous cost of litigation makes it almost certain that few Class Members would ever be able to even seek, let alone obtain, redress for their injuries.

59.    Plaintiff has retained counsel experienced in handling class action claims, including class claims involving violations of federal and state consumer protection statutes.

60.    A class action is the superior method for the fair and efficient adjudication of this controversy.

## FIRST CAUSE OF ACTION
### Violations of Truth in Lending Laws, 15 U.S.C. §1601, *et seq.*

61.    Plaintiff brings this claim individually, on behalf of members of the Classes, and repeats and re-alleges the above paragraphs of this Complaint and incorporates them herein by reference.

62.    TILA, 15 U.S.C. § 1601, *et. seq.*, was enacted on May 29, 1968 as part of the Consumer Credit Protection Act. Pub. L. 90–321. Its implementing regulation is referred to as Regulation Z, 12 C.F.R. 226.1, *et. seq.*, and TILA became effective July 1, 1969. TILA requires that creditors disclose certain information in consumer credit transactions. 15 U.S.C. § 1638.

63.    TILA's purpose is "to assure a meaningful disclosure of credit terms so that the

consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit ...." 15 U.S.C. § 1601(a).

64.     TILA requires that borrowers receive written disclosures regarding important terms of credit before they are legally bound to pay the loan, including the APR, finance charge, amount financed, total payments, number of payments, monthly payment, and due dates of payments. 15 U.S.C. 1638(B). A creditor who fails to comply with the requirements is civilly liable for actual and statutory damages. 15 U.S.C. § 1640(a).

65.     Regulation Z requires that the disclosures be made "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17. The creditor must disclose "[t]he number, amount, and due dates or period of payments scheduled to repay the total of payments." 15 U.S.C. § 1638(a)(2)(B)(6); 12 C.F.R. § 226.18(g).

66.     The staff commentary to Regulation Z states:

> This standard requires that the disclosures be in a reasonably understandable form. For example, while the regulation requires no mathematical progression or format, the disclosures must be presented in a way that does not obscure the relationship of the terms to each other. In addition, although no minimum type size is mandated (except for the interest rate and payment summary for mortgage transactions required by § 228.18(s)), the disclosures must be legible, whether typewritten, handwritten, or printed by computer. 12 C.F.R. Pt. 226, Supp. I, Subpt. C, § 226.17(a)(1).

67.     12 C.F.R. § 226.17(c)(1) requires that "[t]he disclosures shall reflect the terms of the legal obligation between the parties." Official Staff Commentary regarding 12 C.F.R. § 226.17(c)(1) requires that "[t]he disclosures shall reflect the credit terms to which the parties are legally bound as of  the outset of the transaction. In the case of disclosures required under § 226.20(c), the disclosures shall reflect the credit terms to which the parties are legally bound when the disclosures are provided." The Official Staff Commentary further states that "[t]he

12

legal obligation normally is presumed to be contained in the note or contract that evidences the agreement."

68.     TILA focuses not only on the form of a disclosure but also on its accuracy. See *Rossman v. Fleet Bank (R.I.) Nat'l Ass'n*, 280 F.3d 384, 390–91 (3d Cir.  2002) ("[T]he issuer must not only disclose the required terms, it must do so accurately.").  "The accuracy demanded excludes not only literal falsities, but also misleading statements." *Id.* (citation omitted). In that respect, the adequacy of TILA disclosures is to be assessed "from the standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor." *Smith v. Cash Store Mgmt.*, 195 F.3d 325, 327–28 (7th Cir. 1999).

69.     The Staff Commentary to Regulation Z makes clear that no disclosure may cause another disclosure to be obscured or made ambiguous. See 12 C.F.R. Pt. 226, Supp. I, ¶ 17(a)(1)–1. In addition, courts have held that TILA prevents conflicting or inconsistent disclosures, including where the inconsistency arises from statements in multiple documents. *See, e.g., Handy v. Anchor Mortgage Corp.*, 464 F.3d 760, 764 (7th Cir. 2006) (noting that where a lender provided a borrower with both a correct and an incorrect disclosure, the disclosure was unclear in violation of TILA); *Roberts v. Fleet Bank*, 342 F.3d 260, 267–68 (3d Cir. 2003) (holding that in determining whether a required disclosure is clear, a court may consider other information that the lender provided to the borrower).

70.     Defendant violated TILA because the Truth-in-Lending Disclosures misrepresented the interest calculation on the loan by showing on the Truth-in-Lending Disclosures calculations reflected interest compounded monthly when, in fact, the Defendant compounded interest daily.

71.     In addition, the TILA disclosure failed to:

13

a)   Accurately state and properly disclose the Total of Payments applicable to loans;

b)   Accurately state and properly disclose the Finance Charge applicable to loans;

c)   Include an "e" next to any amount on Truth-in-Lending disclosures which was estimated on account of treatment as a simple interest loan;

d)   Materially misrepresented that borrowers had a Grace Period such that a "Late Charge" would only be imposed only if   payment is "more than 15 days late," when, in fact, Defendant imposed interest *each* day after the due date, including for days between the time money was taken out of Class Members' accounts the "Posting Date" of the payments.

## SECOND CAUSE OF ACTION
### Breach of Contract

72.    Plaintiff brings this claim individually, on behalf of members of the Classes, and repeats and re-alleges the above paragraphs of this Complaint and incorporates them herein by reference.

73.    In connection with the mortgage loans Defendant originated to Plaintiff and Class Members, Defendant entered into contracts with Plaintiff and the Class Members.

74.    Defendant materially breached these contract by deliberately obscuring the true nature of the mortgages it originated, *i.e.*, that they were Simple Interest Mortgages rather than Standard Mortgages, and falsely represented the amount of interest charges Plaintiff and Class Members would be required to pay over the course of their loans.

75.    In fact, the Truth-in-Lending Disclosures that Defendant represented to Plaintiff and Class Members were false, as the "Finance Charge," "Amount Financed," and "Total of Payments" disclosed in the Truth-In-Lending Disclosures were lower than the amounts

14

Defendant charged.

76.     Absent Defendant's misrepresentations regarding the type of loans Defendant originated, and the amount of interest Defendant would actually charge, Plaintiff and Class Members would not have entered into the mortgage loan contracts on the same terms, would have paid less in interest payments to Defendant than they otherwise would have, or would not have entered into mortgage loan contracts with Defendant altogether.

77.     As a direct and proximate result of Defendant's breach, Plaintiff and the other members of the Class have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## Common Law Fraud

78.     Plaintiff brings this claim individually, on behalf of members of the Classes, and repeats and re-alleges the above paragraphs of this Complaint and incorporates them herein by reference.

79.     Through the Truth-In-Lending Disclosures on Plaintiff and Class Members' mortgage forms, Defendant knowingly and falsely represented that it was originating standard mortgage loans when in fact those loans were simple interest mortgages.

80.     Defendant knowingly and falsely misrepresented to Plaintiff and Class Members the amount of interest they would have to pay over the lifetime of their respective loans.

81.     Defendant knowingly and falsely misrepresented that Plaintiff and Class Members would have to pay less interest payments than they would actually have to pay.

82.     Defendant knew that the figures listed on the Truth-In-Lending Disclosures box were inaccurate.

83.     Defendant made the false representations regarding the amount of interest due on

15

its mortgage loans, and failed to notate that those figures were estimates, in order to induce Plaintiff and other Class Members to enter into mortgage loan agreements.

84.    Plaintiff and Class Members relied on Defendant's representations when they entered into mortgage loan agreements with Defendant.

85.    Absent Defendant's misrepresentations and Plaintiff's reliance, Plaintiff and other Class Members would not have agreed to the terms of the mortgage loan and either would not have taken out loans with Defendant altogether, or would have only taken out loans if the material terms regarding interest payments had been altered.

86.    As a result of the foregoing, Plaintiff and the other members of the Class have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### Fraudulent Inducement

87.    Plaintiff brings this claim individually, on behalf of members of the Classes, and repeats and re-alleges the above paragraphs of this Complaint and incorporates them herein by reference.

88.    To induce Plaintiff and Class Members to enter into mortgage loan agreements, Defendant made misrepresentations regarding the nature of the mortgage loans, *i.e.*, that they were standard mortgages and not simple interest mortgages, as well as the amount of interest payments Plaintiff and Class Members would be required to pay over the course of the loans.

89.    Thereafter, Plaintiff and Class Members discovered that, unbeknownst to them, Defendant fraudulently misrepresented the nature of the loans, and under-reported the amount of interest charges that would be required to pay under the terms of its mortgage loans.

90.    As a result of Defendants fraudulent inducement, Plaintiff and Class Members

16

have been injured.

### FIFTH CAUSE OF ACTION
### New Jersey Consumer Fraud Act

91.     Plaintiff brings this claim individually, on behalf of members of the Classes, and repeats and re-alleges the above paragraphs of this Complaint and incorporates them herein by reference.

92.     Defendant is subject to the New Jersey Consumer Fraud Act.  The New Jersey Consumer Fraud Act provides, in pertinent part: "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." N.J. Stat. Ann. § 56:8-2.

93.     Defendant's conduct, described herein, violated the New Jersey Consumer Fraud Act.

94.     As a result of said violations of the NJCFA, Plaintiff and the other members of the Classes have been damaged in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
### Unjust Enrichment

95.     Plaintiff brings this claim individually, on behalf of members of the Classes, and repeats and re-alleges the above paragraphs of this Complaint and incorporates them herein by reference.

96.     Plaintiff and Class Members conferred benefits on Defendant by making interest

17

payments to Defendant above and beyond the amount of interest Defendant represented that Plaintiff and Class Members would be required to pay over the lifetime of their loans.

97.    Defendant has knowledge of such benefits.

98.    Defendant has been unjustly enriched in retaining the additional interest charges that Plaintiff and Class Members paid, which were above and beyond the amount of interest Defendant initially represented that Plaintiff and Class Members would be required to pay.

99.    Retention of those additional interest payments under these circumstances is unjust and inequitable because Defendant falsely and misleadingly represented, via the Truth-In-Lending Disclosures, the nature of the loans it was originating and the amount of interest Plaintiff and Class Members would be required to pay over the lifetime of those loans.

100.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Class for their unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Classes and against Defendant for:

A.    For an Order declaring Defendant's conduct in violation of the statutes referenced herein;

B.    For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

C.    For prejudgment interest on all amounts awarded;

D.    For injunctive relief as pleaded or as the Court may deem proper, including an Order requiring that Defendant truthfully disclose the full extent of interest payments consumers must pay over the course of Defendant's mortgage loans;

E.    For an Order awarding Plaintiff and the Classes their reasonable

attorneys' fees and expenses and costs of suit;

F.    Such other relief as the Court deems just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on issues so triable.

Dated: December 6, 2017

PLAINTIFF, Paul Aversano

By:    */s/ Sofia Balile*_____
Sofia Balile
Sergei Lemberg (to be admitted *pro hac vice*)
LEMBERG LAW, LLC
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile:   (203) 653-3424
*Attorneys for Plaintiff*